**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.:  19-311 (RC) |
| | : | |
| SAMUEL GILES, | : | Re Document Nos.:   21, 22, 33, 34 |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

**Denying Defendant's Motion to Dismiss; Denying Defendant's Motion to Suppress; and Granting in Part and Denying in Part Government's Motion to Introduce Evidence Under Federal Rules of Evidence 404(b) and 609**

## I.  INTRODUCTION

Defendant Samuel Giles is charged with being a felon in possession of a firearm.  He has moved to dismiss the indictment against him and suppress physical evidence that he argues was obtained in violation of the Fourth Amendment.  *See* Mot. to Dismiss, ECF No. 33; Mot. to Suppress, ECF No. 34.  In addition, the Government has filed a motion in limine seeking to introduce evidence of Giles's past convictions at trial under Federal Rules of Evidence 404(b) and 609.  *See* Gov't Mot. in Lim., ECF Nos. 21.  The Court held an evidentiary hearing on September 18, 2020, to take evidence on Giles's motion to suppress.  *See* Minute Entry (Sept. 18, 2020); Evidentiary Hr'g Tr.

For the reasons stated below, the Court will deny Giles's motions to dismiss and suppress.  It will also grant in part and deny in part the Government's motion in limine.

## II.  BACKGROUND

In the early morning of September 2, 2019, three police officers with the Metropolitan Police Department ("MPD") were on patrol in southeast Washington, D.C.  Evidentiary Hr'g Tr.

at 9–10.  Officers James Wilson, Brandon Varone, and Mikal Barnes were sitting in a parked squad car when they saw a dark-colored Dodge sedan drive by without a license plate on its front bumper.  *See id.* at 9–10, 42.  The officers pulled out of the parking lot where they were parked to follow the sedan, which then turned off the main road.  *Id.* at 42–43.  When the officers discovered the sedan parked without its lights on in an alleyway, the sedan began to move forward.  *Id.* at 18–19.  The officers activated their squad car's emergency lights and "g[ave] loud verbal commands . . . to stop the vehicle."[1]  *See id.* at 19.

After continuing to drive onward for a few moments, Giles exited the sedan, asked the officers why they were pulling him over, and ran down the street.  *Id.* at 19.  Barnes noticed that Giles was clutching something black to his waistband, but he could not tell what it was.  *Id.* at 23.  Wilson and Varone exited the squad car and chased Giles.  *Id.* at 20.  Meanwhile, the sedan had begun to roll backwards, so Barnes reversed the squad car to get out of the way.  *Id.*  When the sedan stopped moving, Barnes ran over to it and put it in park.  *Id.*  The engine was still running.  *Id.* at 21.  Barnes then joined Wilson and Varone, who were trying to put Giles in handcuffs in a field across the street.  *Id.*  Barnes testified that the officers pepper sprayed Giles because he was resisting.  *Id.* at 24–25.  The officers eventually subdued Giles and placed him under arrest.  *Id.*

Soon, several other police officers and some paramedics arrived at the scene.  *See id.*  While paramedics treated Giles across the street, Varone discovered a black fanny pack and a knife in the field where Giles was handcuffed.  Gov't Ex. 6, Varone's Body-Worn Camera

---

[1] Sometime earlier in their patrol, the MPD officers had received an alert identifying the license plate on back of the sedan as stolen.  Evidentiary Tr. at 12–13, 40.  But Barnes testified that he had not seen the sedan's back plate or "ma[d]e the connection between" the stolen plate alert and the sedan until after attempting to initiate the traffic stop.  *Id.* at 42–43.  As it turns out, the alert was incorrect; the plate had not been stolen.  *Id.* at 57–59, 65.

Footage ("Gov't Ex. 6") at 26:00–26:15.  Varone walked over to Giles and asked, "Before I look

in that bag—what's in that bag over there?"  *Id.* at 29:29–31.  Giles responded, "What bag? . . . .

Y'all patted me down—I ain't have no bag."  *Id.* at 29:31–35.  Varone repeated, "The bag that

you dropped when we were scuffling in the exact location where you're at—what's in that bag

next to the knife over there?"  *Id.* at 29:35–29:42.  Giles again denied having a bag.  *See id.* at

29:42–44 ("I didn't have no [indecipherable].").  Varone and Wilson then opened the fanny

pack.  *Id.* at 32:36–52.  Inside were a handgun, ammunition, and Giles's identification card.

Evidentiary Hr'g Tr. at 30–31; Gov't Omnibus Opp'n to Mots. to Dismiss and Suppress ("Gov't

Omnibus Opp'n") at 3, ECF No. 43.  A federal grand jury indicted Giles for unlawful possession

of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).  Indictment at 1, ECF No. 1.

### III.  ANALYSIS

#### A.  Motion to Dismiss

Giles moves to dismiss the indictment on the grounds that the Government will be unable

to establish a chain of custody for the firearm it alleges he illegally possessed.  Mot. to Dismiss

at 1–2.  The premise of his argument is that neither of the police officers who discovered the

firearm would be able to testify.  *See id.* at 4; *see also United States v. Mitchell*, 816 F.3d 865,

871 (D.C. Cir. 2016) ("It is generally recognized that tangible objects become admissible in

evidence only when proof of their *original acquisition* and subsequent custody forges their

connection with the accused and the criminal offense." (emphasis added) (citation omitted)).

Wilson resigned and moved away from the District of Columbia; Varone was injured in a car

accident.  *See* Notice ¶¶ 4, 6, 8, ECF No. 27.  But the Government has informed the Court that

Varone has recovered from his injuries and is prepared to testify.  *See* Evidentiary Hr'g Tr. at 7.

Because Giles's motion to dismiss depended on Varone's absence, the motion is denied as moot.

### B.  Motion to Suppress

In his motion to suppress, Giles argues that the evidence discovered in the fanny pack—most significantly, the gun and ammunition—were fruits of the poisonous tree and should be suppressed.[2]  Mot. to Suppress at 1, 4.  Under the fruit-of-the-poisonous-tree doctrine, "evidence that would likely not have been found but for a Fourth Amendment violation must usually be suppressed."  *United States v. Peyton*, 745 F.3d 546, 556 (D.C. Cir. 2014).  Giles asserts that two violations of his Fourth Amendment rights led to officers discovering the gun and ammunition.  First, he says that the police officers unlawfully seized him when they conducted the traffic stop.  *Id.* at 8.  Second, he challenges the officers' search of the fanny pack as unlawful.  *Id.* at 8–9.  The Court examines each of his arguments in turn.

### 1.  The Traffic Stop

A traffic stop is a "seizure" under the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809 (1996).  But "the decision to stop an automobile is reasonable"—and therefore constitutional—"where the police have probable cause to believe that a traffic violation has occurred."  *Id.* at 810.  That is true "even if the offense is a minor one."  *United States v. Mitchell*, 951 F.2d 1291, 1295 (D.C. Cir. 1991) (approving traffic stop when officer witnessed defendant speed and fail to signal a turn).  And importantly, reasonableness is assessed against an objective standard, so if the circumstances leading up to the stop support it, the subjective motivation of the officer is irrelevant.  *See Whren*, 517 U.S. at 813; *United States v. Hill*, 131 F.3d 1056, 1059 (D.C. Cir. 1997).

---

[2] Giles also wants to suppress a small amount of marijuana found in the car he was driving.  Mot. to Suppress at 4.  The Government responds that "there was no evidence recovered during the search of the Defendant's vehicle that the government seeks to introduce at trial."  Gov't Omnibus Opp'n at 15.  The Court will hold the Government to its word.  Consequently, the Court will not evaluate the constitutionality of the vehicle search.

Applying that rubric, it is clear that the police officers' traffic stop was constitutional. District of Columbia law provides that motor vehicles "shall display two (2) current identification tags, with one (1) on the front and the other on the rear." D.C. Mun. Regs. tit. 18, § 422. Barnes testified that "the first thing [he] observed" when he saw Giles's car was that it "did not have any front tags," Evidentiary Hr'g Tr. at 18, and Giles does not contest Barnes's recollection. Indeed, photographs taken after Giles's arrest confirm that the car did not have a license plate on its front. *See id.* at 18, 64; Gov't Ex. 7. The circumstances reasonably indicated that Giles had committed a traffic offense. Consequently, the traffic stop was reasonable. *See United States v. Draine*, 48 F.3d 562, 1995 WL 66735, at *1 (D.C. Cir. 1995) (per curiam) (unpublished table decision) ("The stop of appellant's car was justified based on the officers' objectively reasonable belief that appellant's failure to display a license tag on his front bumper, as well as the heavy tint on all of the vehicle's side windows, were violations of District of Columbia traffic regulations."); *United States v. Glover*, 851 A.2d 473, 476 (D.C. 2004) (approving traffic stop when defendant's "front license plate was propped up against his windshield and hence not 'securely fastened'" as required by D.C. law (citation omitted)).[3]

## 2. Search of the Fanny Pack

Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Giles argues

---

[3] Giles focuses on the error in the MPD's reporting system that incorrectly showed his license plate as stolen. *See, e.g.*, Def.'s Suppl. to Mot. to Suppress at 4–5, ECF No. 53. But it does not matter whether the system's entry for his license plate—or the alert that instructed the officers to look for the supposedly stolen plate—were based in fact. It is enough that the officers observed Giles commit a traffic violation by failing to have a license plate on the front of his car. That fact alone would give a reasonable police officer probable cause to initiate a traffic stop.

that, because the officers lacked a warrant, their search of his fanny pack was unconstitutional. *See, e.g.*, Mot. to Suppress at 8–9.  The Government responds that the officers' search fit within two of the narrow exceptions to the Fourth Amendment's warrant requirement.  The Court finds that only one of them permitted the search.

First, the Government claims that the officers were entitled to search the fanny pack incident to Giles's arrest.  *See* Gov't Omnibus Opp'n at 12–15.  Searches incident to arrest comprise one exception to the warrant requirement.  *Gant*, 556 U.S. at 338.  The validity of such a search must be grounded in a lawful arrest, *United States v. Bookhardt*, 277 F.3d 558, 564 (D.C. Cir. 2002), but that is not where Giles addresses his counterargument.[4]  Giles asserts instead that the search of the fanny pack exceeded its permissible scope.  *See* Mot. to Suppress at 8–9; Def.'s Suppl. to Mot. to Suppress at 7–8, ECF No. 53.  "[A] search incident to arrest may only include the arrestee's person and the area within his immediate control," meaning "the area from within which he might gain possession of a weapon or destructible evidence."  *Gant*, 556 U.S. at 339 (internal quotation marks omitted) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).  That important limitation restricts the exception to its underlying rationale: "protecting arresting officers and safeguarding any evidence . . . that an arrestee might conceal or destroy."  *Id.*

---

[4] Perhaps Giles recognizes that there was probable cause to arrest him after he refused to pull over and fled his car without putting it into park.  The Government says these facts establish probable cause that Giles committed reckless driving, a criminal offense in the District of Columbia.  *See* Gov't Omnibus Opp'n at 12–15.  Giles does not respond to that claim.  The Court agrees with the Government.  When Giles got out of his car, it began to roll backwards and Barnes had to "reverse to get out of the way."  Evidentiary Hr'g Tr. at 46.  There was thus probable cause that Giles had "drive[n] a vehicle upon a highway . . . without due caution and circumspection and . . . in a manner so as to endanger or be likely to endanger a person or property."  *See* D.C. Code § 50-2201.04(b) (defining reckless driving).  It makes no difference that Giles was ultimately not charged with reckless driving.  *See Bookhardt*, 277 F.3d at 565.

Giles is right.  Police officers opened the fanny pack in the field across the street from where Giles sat in handcuffs.  Evidentiary Hr'g Tr. at 48–49.  He was also surrounded by several police officers and paramedics.  *See id.* at 32–35; Gov't Ex. 6 at 26:00–15.  In those circumstances, "it is inconceivable that [Giles] could have gained access to" the fanny pack.  *See United States v. Lyons*, 706 F.2d 321, 330–31 (D.C. Cir. 1983) (concluding that the search of a closet "several yards away from" a defendant, who sat handcuffed among six police officers, was not a permissible search incident to arrest); *see also United States v. Wills*, 316 F. Supp. 3d 437, 449 (D.D.C. 2018) (listing factors for determining "whether police properly searched a backpack or similar personal bag incident to arrest" as including, *inter alia*, "whether the defendant was handcuffed," "the location of the backpack in relation to the defendant," and "whether there were other officers nearby to surround or assist in supervising the defendant").  Because the "justifications for the search-incident-to-arrest exception [we]re absent" when police searched the fanny pack, the exception does not apply.  *See Gant*, 556 U.S. at 339.

The Government's alternative basis for searching the fanny pack succeeds where its first one failed.  It argues that Giles abandoned any expectation of privacy in the fanny pack when he told police the pack did not belong to him.  Gov't Omnibus Opp'n at 11–12; Gov't Suppl. in Opp. to Mot. to Suppress at 2–3, ECF No. 54.  "Courts have long held that, when a person voluntarily denies ownership of property in response to a police officer's question, 'he forfeits any reasonable expectation of privacy in [the property]; consequently, police may search it without a warrant.'"  *United States v. Mangum*, 100 F.3d 164, 170 (D.C. Cir. 1996) (alteration in original) (quoting *United States v. Lewis*, 921 F.2d 1294, 1302 (D.C. Cir. 1990)).  Giles's response to Varone asking if the fanny pack was his—"What bag? . . . . Y'all patted me down—I ain't have no bag," Gov't Ex. 6 at 29:31–35—would seem to fit neatly within this rule.  *See*

7

*Mangum*, 100 F.3d at 170 (concluding that defendant abandoned property when he "was asked whether the bag was his," *id.*, and replied "it's not my bag, it's the driver's," *id.* at 168); *Lewis*, 921 F.2d at 1303 (holding that defendant abandoned her bag when an officer "asked if she owned the tote bag" and "[s]he said it was not her bag"); *see also United States v. Brady*, 842 F.2d 1313, 1315–16 (D.C. Cir. 1988) (expressing "serious doubts" about district court's finding that defendant had not abandoned a gym bag when he stated in "absolute" terms: "I don't know whose bag that is.  I never saw it before").

But Giles asserts that he did not voluntarily abandon the bag.  "An abandonment may be involuntary, and thus invalid, where it results directly from police misconduct, such as an illegal search or seizure, deceit, or, perhaps, a pattern of harassment."  *Lewis*, 921 F.2d at 1302.  Giles cites two sources of supposed police misconduct.  He first reiterates his complaint that the traffic stop was illegal.  *See* Mot. to Suppress at 6.  The Court has already rejected that argument, so it will not repeat itself here.  Second, Giles contends, the officers improperly elicited his statement disclaiming ownership of the pack because they had not given him the *Miranda* warnings.  *See* Def.'s Suppl. to Mot. to Suppress at 6–7.  The Court is unpersuaded by that contention too.

The nature of the *Miranda* rule counsels against equating prewarned statements with "involuntary" ones that would negate abandonment.  The *Miranda* rule is a prophylactic meant to protect the Fifth Amendment right against self-incrimination.  *United States v. Hallford*, 816 F.3d 850, 856 (D.C. Cir. 2016) (quoting *United States v. Patane*, 542 U.S. 630, 636 (2004) (plurality opinion)).  Because only testimonial evidence implicates that core right, the *Miranda* rule excludes only testimonial evidence; it does not suppress the physical fruits of an unwarned statement.  *See id.* (quoting *Patane*, 542 U.S. at 636 (plurality opinion)); *Patane*, 542 U.S. at 645 (Kennedy, J., concurring).  It would thus be odd for *Miranda* to block the admission of the fanny

pack's contents indirectly by rendering Giles's abandonment involuntary when the doctrine would not exclude those physical fruits directly. *See United States v. Borrero*, 770 F. Supp. 1178, 1193–94 (E.D. Mich. 1991) (rejecting argument that lack of *Miranda* warnings negated defendant's disclaimer of ownership and warranted suppression of bag's contents because *Miranda* is concerned only with testimonial evidence). Moreover, even if *Miranda* would exclude Giles's postarrest statements disclaiming ownership in the pack,[5] that does not mean Giles gave those statements involuntarily. *See Hallford*, 816 F.3d at 856 ("The Self-Incrimination Clause . . . is not implicated by the admission into evidence of the physical fruit of a *voluntary* statement." (emphasis added) (quoting *Patane*, 542 U.S. at 636 (plurality opinion)).

Closer to the abandonment doctrine's voluntariness concern is the Due Process Clause's separate bar on coerced statements. If triggered, that doctrine would suppress physical fruits like a handgun. *See id.* at 856 & n.8 (quoting *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion)). But Giles does not suggest that his disclaimer of ownership in the fanny pack was coerced in the sense that his "will [was] overborne and his capacity for self-determination critically impaired." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973) (quoting *Columbe v. Connecticut*, 367 U.S. 568, 602 (1961)). Nor did the Court detect any signs of coercion when it reviewed the footage from Varone's body-worn camera. *See* Gov't Ex. 6 at 29:25–45; *cf. United States v. Brown*, 663 F.2d 229, 231 (D.C. Cir. 1981) (en banc) ("Police pursuit does not of itself render abandonment involuntary.").

The Court therefore holds that Giles voluntarily denied ownership in the fanny pack and abandoned any expectation of privacy in it. The officers' failure to give him *Miranda* warnings does not require suppression of physical evidence or render his abandonment involuntary. *See*

---

[5] Giles has not asked the Court to rule on this issue, so it does not do so here.

*Lewis*, 921 F.2d at 1303 (explaining that the Fifth Amendment did not require exclusion of physical evidence found in defendant's bag after she repeatedly denied ownership because she was "not coerced into producing [the] evidence" and "the principal evidentiary fruits . . . were not testimonial in nature"). The pack's contents are admissible.

### C.  Prior Bad Acts Evidence

Finally, the Government wants to use Giles's previous convictions against him at trial. Giles has been convicted of, *inter alia*, two counts of second-degree murder, assault with a deadly weapon with intent to kill, and being a felon in possession of a firearm. Pre-Plea Criminal History Calculation at 3–9, ECF No. 19. The Government argues that those convictions help establish that Giles (1) knew he was handling a gun and (2) had access to guns. Gov't Mot. in Lim. at 2, 7. It also intends to introduce the convictions as impeachment evidence should Giles testify.[6] *Id.* at 2, 4–5. Whether the Government can use Giles's prior convictions for these purposes depends on Federal Rules of Evidence 404(b) and 609.

Federal Rule of Evidence 404(b) prohibits evidence of a crime "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But the rule affirmatively states that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). Consequently, the rule "does not prohibit character evidence generally, only that which lacks any purpose but proving character." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000). It is thus "a rule of inclusion rather than exclusion." *Id.* That said, Rule 404(b) is not the end of the matter.

---

[6] Initially, the Government also sought to introduce as impeachment evidence Giles's conviction for possessing a shank in a penal facility. *See* Gov't Mot. in Lim. at 5; *see also* Pre-Plea Criminal History Calculation at 7–8. It has withdrawn that request. Gov't Reply at 2 n.1.

"Evidence that is admissible under Rule 404 may nonetheless be excluded under Rule 403 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001) (quoting Fed. R. Evid. 403).  Courts assessing the admissibility of prior convictions must consider both rules.  *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990).

Giles's prior convictions satisfy Rule 404(b)'s requirements.  He is charged with being a felon in possession of a firearm.  The Government's theory of the case is that he constructively possessed the gun found in the field where he was arrested.  Gov't Mot. in Lim. at 9 n.2.  That means it must prove that Giles "knew of, and was in a position to exercise dominion and control over" the gun.  *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (quoting *United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999)).  The law is well established that the prosecution can introduce evidence of a defendant's past crimes to show he knew he was in possession of a gun.  *See, e.g.*, *United States v. Bell*, 795 F.3d 88, 99 (D.C. Cir. 2015) ("Knowledge of firearms is a permissible purpose under Rule 404(b).  Prior use and familiarity with firearms is relevant to satisfying the scienter requirement to multiple charged offenses . . . ." (citations omitted)); *Cassell*, 292 F.3d at 794–95 ("A prior history of intentionally possessing guns . . . is certainly relevant to the determination of whether a person in proximity to such a chattel on the occasion under litigation knew what he was possessing and intended to do so.").  Giles's convictions show his familiarity with guns, so Rule 404(b) does not bar evidence of them.[7]

---

[7] The Court does not need to determine whether the Government's other stated purpose behind introducing Giles's convictions—"to provide context as to his means to obtain firearms," Gov't Mot. in Lim. at 7—is a permissible one under Rule 404(b).  It is enough that the convictions fulfill a single purpose other than proving character.  *See Bowie*, 232 F.3d at 930.

But Rule 403 does.  Giles's convictions involve serious offenses that are highly likely to unfairly prejudice him.  Two convictions were for murder, one was for assault with a deadly weapon, and another was for the same crime he is currently charged with.  Jurors "will very naturally believe that a person is guilty of the crime with which he is charged if it is proved to their satisfaction that he has committed a similar offense, or any offense of an equally heinous character."  *United States v. James*, 555 F.2d 992, 1001 n.49 (D.C. Cir. 1977) (quoting *Drew v. United States*, 331 F.2d 85, 94 n.8 (D.C. Cir. 1964)).  The Court is concerned that just hearing that Giles was convicted of murder, assault with a deadly weapon, or illegally possessing a firearm may be enough to turn some jurors against him.  Meanwhile, although evidence of Giles's convictions has some probative value to show his familiarity with guns, the "sordid incidentals" of those offenses add little.  *See id.* at 1001.  Surely the jurors do not need to know that Giles shot and killed two people to understand that he had knowledge of guns.  *See* Gov't Mot. in Lim. at 8.  The great risk that the details of Giles's prior convictions will inflame the jury substantially outweighs the minimal probative value those details provide.

To balance the prosecution's interest in showing Giles's familiarity with guns against the need to have an unbiased jury, the Court will permit the Government to introduce evidence that Giles was convicted for felonies involving guns.  But the Government will not go further into the names of those crimes or the facts underlying them.  In addition, the Court observes that the Government has indicated a willingness to stipulate regarding the facts of Giles's experience with firearms.  *See* Gov't Mot. in Lim. at 10.  It encourages the parties to come to an agreement to avoid any problems at trial.

The Court's Rule 403 analysis decides the Rule 609 question too.  As relevant here, Rule 609 permits the prosecution to attack a defendant-witness's character for truthfulness with a

criminal conviction if the crime was a felony and "the probative value of the evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1)(B); *see also United States v. Pettiford*, 238 F.R.D. 33, 37 (D.D.C. 2006).  The bar is higher when over ten years have passed since the defendant's "conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b).  In those cases, the prosecution must show that the conviction's "probative value . . . *substantially* outweighs its prejudicial effect" and give the defendant fair notice. *Id.* (emphasis added).  So regardless of the age of a conviction, its probative value must outweigh its risk of prejudicial effect.  Because the Court came to the opposite conclusion with respect to the details of Giles's convictions, those details may not be introduced as impeachment evidence under Rule 609.  Once again, however, the Government may introduce evidence indicating that Giles was convicted of gun-related felonies. *See United States v. Lipscomb*, 702 F.2d 1049, 1073 (D.C. Cir. 1983) (en banc) (concluding that "all felonies less than 10 years old have at least some probative value on the issue of credibility").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss and suppress are denied, and the Government's motion in limine is granted in part and denied in part.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 19, 2020                               RUDOLPH CONTRERAS
                                                        United States District Judge